UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN HETHERINGTON,

    Plaintiff                                           Civil Action No. 08-11133

v.                                                HON. JOHN FEIKENS
                                                    U.S. District Judge
                                                    HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL            U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Brian Hetherington brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB) and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

## PROCEDURAL HISTORY

On November 22, 2004, Plaintiff filed an application for DIB and SSI benefits,

alleging an onset of disability date of September 29, 2004[1] (Tr. 43-45, 223-225). After the initial denial of the claim on April 11, 2005, Plaintiff filed a timely request for an administrative hearing, held on September 19, 2007 in Flint, Michigan before Administrative Law Judge ("ALJ") John L. Christensen (Tr. 230). Plaintiff, represented by attorney Michael Lupisella, testified, as did Vocational Expert ("VE") Michele Robb (Tr. 245-248). On October 5, 2007, ALJ Christensen found that Plaintiff was able to perform his past relevant work as a dishwasher, prep cook and grocery bagger (Tr. 18-19). On January 17, 2008, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on March 17, 2008.

## BACKGROUND FACTS

Plaintiff, born September 26, 1985, was age 22 when the ALJ issued his decision (Tr. 44). He obtained a GED and worked previously as a dishwasher, prep cook, grocery bagger, and sales person (Tr. 85-86, 90). Plaintiff alleges disability as a result of back pain, as well as bipolar and depressive disorders (Tr. 61).

**A.    Plaintiff's Testimony**

Plaintiff, unmarried, testified that he lived in Flint, Michigan with his brother (Tr. 234-235). He reported weighing 160 pounds and standing 5'9" (Tr. 235). Plaintiff, right-handed, reported that he held an unrestricted driver's license and drove on a regular basis (Tr.

---

[1] In response to Plaintiff's admission at the hearing that he had returned to work, Plaintiff's counsel amended the claim, requesting benefits for a closed period ending on December 31, 2005 (Tr. 244).

236). He indicated that for the past two and a half months, he had been working at McDonald's (Tr. 237). He characterized his current co-workers as "pretty reasonable" (Tr. 237).

Plaintiff testified that he worked formerly as a dishwasher, prep cook, and grocery bagger, adding that he disliked washing dishes (Tr. 238). He reported quitting a restaurant position in 2004 after his employer cut his pay and transferred him to another location (Tr. 239). Plaintiff noted that prior to his pay cut, he was "complaining every[]day" of back pain (Tr. 240). He attributed "90 percent" of his alleged inability to work between September, 2004 to the beginning of 2006 to back problems, testifying further that ensuing financial problems created mental stress (Tr. 240). He indicated that he sought mental health treatment "a couple times," noting that after he quit his job, he became lethargic and depressed (Tr. 240-241). Plaintiff characterized his concentrational abilities as "a little foggyish" (Tr. 242). He reported that his condition improved when he moved back to his parents' house and began eating a healthy diet and exercising (Tr. 243).

### B.  Medical Evidence

#### 1. Treating Sources

In September, 2003, imaging studies of the thoracic spine showed a mild curvature at T5-T6 but otherwise unremarkable results (Tr. 140-141). A chest x-ray taken the same month was negative for abnormalities (Tr. 142). In October, 2003, a "Physical Therapy Initial Evaluation" noted that Plaintiff had experienced back pain and difficulty kneeling, squatting and lifting for approximately six months (Tr. 132). Plaintiff demonstrated 4/5

flexion and extension of the knee but otherwise full strength (Tr. 133). Michael Banks, P.T. deemed Plaintiff "highly motivated" to return to his "previous level of function" (Tr. 134).

In November, 2004, Plaintiff received a lumbosacral spine evaluation after reporting severe back pain (Tr. 130). He was prescribed manual therapy and advised to use hot and cold packs (Tr. 131). The same month, Neil A. Friedman, M.D. examined Plaintiff of behalf of his treating physician, noting that although Plaintiff quit working the previous month, he continued to experience back pain (Tr. 145). Dr. Friedman, noting that "[v]isual inspection of the lumbosacral spine reveal[ed] no obvious deformity, observed that Plaintiff walked with a normal gait, squatted and bent without difficulty, and exhibited a normal range of lumbosacral motion (Tr. 146). Results of a bone scan of the lumbar spine were unremarkable (Tr. 148). An April, 2005, a mental health intake assessment states that Plaintiff experienced "anxiety, nervousness, shyness, depression [mild], mood swings," as well as stress related to his financial condition (Tr. 179). Therapist Kristin May, advising 20 sessions of therapy, assigned Plaintiff a GAF of 50[2] (Tr. 185).

In May, 2007, Plaintiff sought treatment for neck pain (Tr. 191). Imaging studies of Plaintiff's cervical spine showed no abnormalities (Tr. 214). Gary Smothers, D.O., noting that Plaintiff had experienced neck pain for the past six months, advised him to see a physiatrist (Tr. 191).

---

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision*, 34 (*DSM-IV-TR* )  (4th ed.2000).

**2. Non-Treating Sources**

In March, 2005, Marianne Goergen, Psy.D., L.P. performed a consultive mental examination of Plaintiff on behalf of the SSA (Tr. 154-159). Plaintiff reported a loss of appetite, sleeping 12 or more hours each day, and lack of motivation, but could not recall "a specific accident or reason why his back hurt" (Tr. 155). He appeared pleasant but poorly groomed (Tr. 156). Dr. Goergen assigned Plaintiff a GAF of 58[3] (Tr. 158). The following month, a Psychiatric Review Technique Form, noting evidence of "avoidance behavior," determined the presence of an anxiety-related disorder (Tr. 165). The assessing physician found that under the "B" Criteria, Plaintiff experienced moderate limitations in social functioning, and concentration, persistence, or pace, but concluded that Plaintiff was capable of unskilled work (Tr. 170, 172). The same month, a Mental Residual functional Capacity Assessment found that Plaintiff was moderately limited in his ability to complete a workweek without interruptions from psychologically based symptoms, get along with coworkers, or maintain socially appropriate behavior, but was capable of unskilled labor (Tr. 175-176). The Assessment found that Plaintiff's mental abilities were otherwise unimpaired (Tr. 175-176).

**C.   Vocational Expert Testimony**

---

[3] A GAF score of 51- 60 indicates "[m]oderate symptoms . . . or moderate difficulty in social, occupational, or school functioning . . . ." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders,* 32 (4th Ed. 1994)(*DSM-IV*).

VE Michele Robb classified Plaintiff's former work as a dishwasher as unskilled at the heavy exertional level; prep cook work, unskilled, medium or heavy; and grocery bagger, unskilled, light or medium[4] (Tr. 50). The ALJ posed the following question to the VE:

> "I want you to assume that we have an individual of the same age, education, and work experience and that individual has the following residual functional capacity; that would be to do medium work; only occasional bending, twisting, kneeling, crouching, and crawling; simple routine tasks in a low-stress environment. By that I mean minimal changes in the workplace setting. Given those limitations, is there work an individual can perform, and if so, please tell me what that work would be along with the occupational title, the number of jobs available in the region. By the region I mean the State of Michigan. Included in that I would like to know if he could perform any of the past relevant work?"

(Tr. 247). The VE stated that given the above limitations, Plaintiff could perform his past relevant work as a prep cook and dishwasher at the medium exertional level (Tr. 247-248). In response to questioning by Plaintiff's attorney, the VE testified that if the hypothetical individual experienced "interruptions from psychologically-based symptoms" during 20 percent of his work shift, all work would be precluded (Tr. 248).

---

[4] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

**D.    The ALJ's Decision**

Citing Plaintiff's medical records and testimony, ALJ Christensen found that although Plaintiff experienced the severe impairments of lower back pain and a history of an anxiety disorder pursuant to 20 C.F.R. § 404.1521, the conditions did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 15-16). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"): "[M]edium work performing simple routine tasks in a low stress working environment . . . [with] minimal changes in workplace settings" (Tr. 17).

The ALJ concluded that Plaintiff could perform his past relevant work as a dishwasher, prep cook, and grocery bagger (Tr. 19). In support of the non-disability finding, he found that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of his conditions "not entirely credible" (Tr. 18). He cited an April, 2005 mental status examination showing "no significant abnormalities" (Tr. 16). The ALJ also noted that a November, 2004 bone scan of the lumbar spine was "entirely normal" (Tr. 16).

**STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,*

305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS[5]**

### **A. Vocational Expert Testimony**

Plaintiff argues first that the hypothetical question posed to the VE did not include limitations reflecting the April, 2005 Psychiatric Review Technique's ("PRT's")finding that he experienced moderate limitations in concentration, persistence, and pace. *Plaintiff's Brief* at 7-13 (*citing* Tr. 170). Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994), Plaintiff contends that the hypothetical question's non-exertional limitations of "simple routine tasks" and a "low stress environment" did not fully account for his concentrational difficulties.

---

[5]

The Administrative Transcript also contains two pages of material related to the April, 2005 Mental Health Intake Assessment, submitted after the administrative opinion was issued on October 5, 2007 (Tr. 228-229).  Pursuant to *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir. 1993), material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court.  Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.,* 2 F.3d at 695-96.  Sentence Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but *only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . .*" (emphasis added).   Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of 42 U.S.C. §405(g).

A review of this evidence shows that it is not material to the ALJ's non-disability finding**.**  Further, Plaintiff has offered no reason for his failure to include it with the earlier-submitted records.

*Brief.* at 7.

Pursuant to *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987), a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. More recently, in *Webb v. Commissioner of Social Sec*. 368 F.3d 629 (6th Cir. 2004), the court rejected the proposition that an ALJ is required to list all of a claimant's maladies verbatim in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Id.* at 632 (internal citations omitted)(*citing Varley*, *supra*, 820 F.2d at 779).

The failure to account for concentrational or pacing deficiencies constitutes reversible error. In *Bankston v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000)(Zatkoff, J.), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment." Likewise, "moderate" deficiencies suggest substantial limitations which should be acknowledged in the hypothetical question. The fact that a job is simple and routine has nothing to do with whether or to what degree a worker's moderate concentrational deficiencies will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies. *See, e.g.*, *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996); *McGuire v. Apfel*, 1999 WL 426035, 15 (D. Or. 1999). Nor does the qualifier "low stress" effectively "capture the concrete consequences" of Plaintiff's limitations in pace. *Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir.

1996). Stress does not necessarily correlate with pace and the ability to complete tasks in a timely manner over an eight-hour workday.

Nonetheless, in the present case, the ALJ's hypothetical question, as posed, does not present grounds for remand. First, Plaintiff concedes that an ALJ need not include the talismanic language of the PRT in hypothetical questions to avoid remand. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001). Second, while neither "simple routine tasks" nor "a low stress environment," considered piecemeal, would account for moderate concentrational deficiencies, these limitations, along with a work atmosphere requiring "minimal changes" may be read cumulatively to encompass his moderate impairments (Tr. 164). *Id.* Third, having adopted the PRT's discrete finding that Plaintiff experienced moderate concentrational limitations, the ALJ also reasonably adopted the PRT's conclusion that Plaintiff was nonetheless capable of unskilled work (Tr. 172). Plaintiff's argument for the selective adoption of the PRT's "moderate" concentrational limitations without considering Review's ultimate conclusion would amount to a distortion of the record.

Further, substantial evidence, cited at length by the ALJ, supports his choice of hypothetical limitations. The ALJ noted that Plaintiff worked "on at least a part time basis during the alleged period of disability," noting further that Plaintiff did had not received long-term or intensive treatment for psychological problems (Tr. 18). The ALJ observed that an April, 2005 mental status examination showed "no significant abnormalities" (Tr. 16). While Plaintiff disputes the omission of a number of his alleged impairments in the question to the VE, "[a] ALJ is not obliged to incorporate unsubstantiated complaints into his

-11-

hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994); *Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Likewise, discrepancies between the hypothetical question and the ultimate RFC do not present grounds for remand. Plaintiff, noting that the hypothetical question limited him to "occasional bending, twisting, kneeling, crouching, and crawling" faults the ALJ for omitting these impairments from the RFC found in the administrative decision. *Brief* at 12-13 (*citing* 17, 247). However, while the ALJ included these postural limitations in the hypothetical question, he noted that substantial evidence supported their omission from the RFC:

> "During [Plaintiff's] alleged period of disability he was not receiving any significant treatment for any physical . . . problem. He did not appear to be in pain at the time of hearing, has not been to a pain clinic and does not require surgery. It appears [Plaintiff] was exaggerating his complaints to a considerable extent"

(Tr. 18).

For the same reasons, although Plaintiff contends that the ALJ's finding that he could perform his past relevant work as a "dishwasher, prep cook and grocery bagger" (Tr. 19) stands at odds with the VE's testimony that the grocery bagger position was precluded by the bending and twisting requirements, *Brief* at 13 (*citing* Tr. 247-248), substantial evidence supports the administrative finding that Plaintiff did not experience these postural limitations. As such, the ALJ did not err in concluding that Plaintiff was capable of the grocery bagger position. Further, the administrative transcript belies Plaintiff's related assertion that the VE

found that he was unable to return to his past relevant job as a dishwasher. While the VE found that based on the hypothetical, Plaintiff could not return to his work as a dishwasher as formerly performed at the *heavy* exertional level (Tr. 50), Plaintiff could nevertheless perform this position at the *medium* exertional level (Tr. 248).

### B. "Mild" Social Impairments

Plaintiff argues next that the ALJ erred by neglecting to explain his reasons for concluding that Plaintiff experienced *mild* limitations in social functioning (Tr. 17), contrary to the PTR's finding of *moderate* limitations (Tr. 170). *Brief* at 16-17 (*citing* SSR 96-8p). On a related note, Plaintiff contends that the ALJ failed to address the April, 2005 Mental Residual Functional Capacity finding that he experienced moderate limitations in his ability to interact with coworkers, work without psychological interruptions, complete a normal workday, and avoid behavioral extremes. *Id.* at 16-17 (*citing* Tr. 174-175). He also argues that the ALJ ignored the April, 2005 Mental Health Intake Assessment assigning him a GAF of 50. *Id.* (*citing* Tr. 185).

> SSR 96-8p states in relevant part:
> "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."

Further, while "[a]dministrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. . . . administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion

-13-

evidence . . ." 20 C.F.R. § 416.927(f)(2)(i).

Despite Plaintiff's claim to the contrary, the ALJ discussed his reasons for finding that Plaintiff experienced mild, rather than moderate impairments in social functioning, observing that "[t]here is no indication of difficulty getting along with others" (Tr. 17). In further support of his finding, the ALJ, drawing on his administrative hearing observations, permissibly noted that Plaintiff "responded appropriately to all questions asked of him" (Tr. 17). *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

Moreover, although Plaintiff faults the ALJ omitting discussion of the fact that he was assessed with *moderate* impairments in four Mental Residual Functional Capacity categories, he offers no support for his contention that the ALJ was required to discuss these four discrete findings (or the remaining 16 categories showing an absence of impairment) contained within the April, 2005 non-examining assessment. "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)). Likewise, because the ALJ acknowledged and discussed the Mental Health Intake Assessment, finding that "no significant abnormalities were noted on mental status examination" and noting the lack of evidence showing that Plaintiff sought

followup treatment, he was not required to include mention of the GAF score[6] (Tr. 16).

The Court notes in closing that Plaintiff, age 22 at the time of the administrative decision, has not made a particularly strong case for benefits. While recommending the grant of summary judgment to the Commissioner should not be read to trivialize Plaintiff's difficulties for the alleged period of disability, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

---

[6] Further, even assuming that the GAF of 50, by itself, showed disability level impairment, he makes no showing that his condition met SSA's 12-month durational requirement. The amended claim acknowledges that his disability ended on December 31, 2005.

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 27, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 27, 2009.

s/Susan Jefferson
Case Manager
